**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

SAMUEL CARLISLE,

           Plaintiff,

    v.

SOVOS BRANDS, INC.,
WILLIAM R. JOHNSON,
TODD R. LACHMAN,
JEFFERSON M. CASE,
VALARIE L. SHEPPARD,
DAVID ROBERTS,
VIJAYANTHIMALA SINGH,
TAMER ABUAITA, and
NEHA U. MATHUR,

           Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND
JURY DEMAND**

---

Plaintiff Samuel Carlisle ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against Sovos Brands, Inc. ("Sovos" or the "Company") and the members of Sovos' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and

Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell Sovos to Campbell Soup Company ("Campbell") (the "Proposed Transaction").

2. On August 7, 2023, Sovos entered into an Agreement and Plan of Merger with Campbell and Campbell's wholly owned subsidiary, Premium Products Merger Sub, Inc. (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Campbell will acquire Sovos for $23.00 in cash per share of Sovos common stock. Sovos stockholders will also be entitled to receive an additional $0.00182 per day beginning on May 8, 2024 if the Proposed Transaction is not effective by May 7, 2024.

3. On September 13, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Sovos stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinions provided by the Company's financial advisors Goldman Sachs & Co. LLC ("Goldman") and Centerview Partners LLC ("Centerview"); (iii) potential conflicts of interest faced by Goldman, Centerview, and Company insiders; and (iv) the background of the Proposed Transaction.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Sovos stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Sovos stockholders to vote on the Proposed Transaction is currently scheduled for October 16, 2023. It is imperative that such Exchange Act violations are

promptly cured to enable Plaintiff and Sovos' other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Sovos is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Sovos common stock.

10. Defendant Sovos is a Delaware corporation, with its principal executive offices located at 168 Centennial Parkway, Suite 200, Louisville, Colorado 80027. Sovos' shares trade on the Nasdaq Global Select Market under the ticker symbol "SOVO."

11. Defendant William R. Johnson has been Chairman of the Board and a director of the Company at all relevant times.

12.     Defendant Todd R. Lachman has been President, Chief Executive Officer, and a director of the Company at all relevant times.

13.     Defendant Jefferson M. Case has been a director of the Company at all relevant times.

14.     Defendant Valarie L. Sheppard has been a director of the Company at all relevant times.

15.     Defendant David Roberts has been a director of the Company at all relevant times.

16.     Defendant Vijayanthimala Singh has been a director of the Company at all relevant times.

17.     Defendant Tamer Abuaita has been a director of the Company at all relevant times.

18.     Defendant Neha U. Mathur has been a director of the Company at all relevant times.

19.     Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.     Through its subsidiary, Sovos operates as a consumer-packaged food company that manufactures and distributes consumer food products in the United States. The Company operates in two segments: Dinner and Sauces, and Breakfast and Snacks. Sovos' products include pasta sauces, dry pasta, soups, frozen entrees, frozen pizza, yogurts, pancake and waffle mixes, other baking mixes, and frozen waffles sold under the Rao's, Michael Angelo's, noosa, and Birch Benders brands. The Company sells its products principally to retail outlets and wholesale distributors, including traditional supermarkets, mass merchants, warehouse clubs, wholesalers,

4

specialty food distributors, military commissaries, and non-food outlets, such as drug store chains, dollar stores, and e-commerce retailers.

**The Proposed Transaction**

21.     On August 7, 2023, Sovos announced that it had entered into the Proposed Transaction, stating, in relevant part:

> CAMDEN, N.J. & LOUISVILLE, Colo.–(BUSINESS WIRE)– **Campbell Soup Company (NYSE: CPB)** and **Sovos Brands, Inc. (Nasdaq: SOVO)** today announced that the companies have entered into an agreement for Campbell to acquire Sovos Brands, Inc. for $23 per share in cash, representing a total enterprise value of approximately $2.7 billion. This represents a 14.6x adjusted EBITDA multiple[1] including expected annual run rate synergies of approximately $50 million. The strategic transaction adds a high-growth, market-leading premium portfolio of brands to diversify and enhance Campbell's Meals & Beverages division, providing a substantial runway for sustained profitable growth.
>
> Sovos Brands had annual adjusted net sales of $837[2] million in calendar year 2022 and is a compelling growth story as a North America focused food company with compounded annual organic net sales growth rate of 28%[3] from fiscal 2019 to fiscal 2022 offering a variety of premium products including pasta sauces, dry pasta, soups, frozen entrées, frozen pizza and yogurts under the brand names *Rao's*, *Michael Angelo's* and *noosa*. The flagship *Rao's* brand, which represented approximately 69%[4] of Sovos Brands adjusted net sales in fiscal 2022, grew organic net sales by 34.9%[5] compared to the prior year.
>
> "We're thrilled to add the most compelling growth story in the food industry and welcome the talented employees who have built a nearly $1 billion portfolio," said Campbell's President and CEO Mark Clouse. "This acquisition fits perfectly with and accelerates our strategy of focusing on one geography, two divisions and select key categories that we know well. Our focused strategy has enabled us to deliver strong results over the last five years, enhance our brands and capabilities, and generate strong cash flow to lower debt. With all this progress, I am confident in our readiness to execute and integrate this important acquisition. The Sovos Brands portfolio strengthens and diversifies our Meals & Beverages division and paired with our faster-growing and differentiated Snacks division, makes Campbell one of the most dependable, growth-oriented names in food."
>
> "Today marks a momentous occasion for Sovos Brands as we announce our plans to join the Campbell's family," commented Todd Lachman, Founder, President and Chief Executive Officer of Sovos Brands, Inc. "We have built a one-of-a-kind, high growth food company focused on taste-led products across a portfolio of premium brands, anchored by the *Rao's* brand. Our success would not have been possible

without the incredibly talented and passionate team at Sovos Brands, which has been instrumental in building one of the fastest growing food companies of scale in the industry today. This transaction is expected to create substantial value for our shareholders, resulting in a 92% increase from our 2021 IPO price. As one of the most trusted and respected food companies in North America, I'm confident in Campbell's ability to continue bringing our products to more households and further building on our track record of growth and success for years to come."

**Compelling Strategic Rationale**

- **Multi-dimensional Value Creation**

    o   Acquisition unlocks significant value through strong and sustainable growth opportunities

    o   Expect a fast, effective and efficient integration and synergy unlock given familiarity with categories and Campbell's strong capabilities, processes and proven integration playbook

    o   The acquisition is expected to provide considerable earnings growth contribution to the division while unlocking additional value through meaningful cost synergies

    o   Campbell's supply chain excellence and scale are expected to drive operating synergies for Sovos Brands, while improving scale efficiency of Campbell's core operations

- **Attractive Sustainable Profitable Growth**

    o   Significant whitespace opportunity for *Rao's* and *Michael Angelo's* through increased distribution, growing items per store and household penetration to category peer levels

    o   Campbell's expertise in retail execution is expected to enhance shelf productivity, geographic footprint, and sub-category penetration

    o   Sovos Brands' expertise in innovation, category expansion and the marketing of high-growth brands is expected to enhance and strengthen Campbell's capabilities as the portfolio continues to transform

- **Accelerates Campbell's Focused, Strategic Plan**

    o   Further advances the company's focused one geography, two division roadmap – Meals & Beverages and Snacks

- o Solidifies role of Meals & Beverages as a sustainable and dependable contributor to the enterprise, by complementing a stable, core portfolio in mainstream product categories with a fast-growing differentiated, premium segment

- o Delivers Campbell's $1 billion sauces strategic objective by filling in critical white space in the growing ultra-distinctive Italian sauce category, a segment where Campbell's does not currently compete

- o Extends Campbell's presence into the fast growing, on-trend, premium frozen meals segment with *Rao's* and *Michael Angelo's*, while adding meaningful scale to the existing Pepperidge Farm's frozen portfolio

**Financial Highlights**

The all-cash offer for Sovos Brands of $23 per share for a total enterprise value of approximately $2.7 billion represents an adjusted EBITDA multiple of 14.6x including run rate synergies and 19.8x excluding synergies[6]. The acquisition is expected to support Campbell's long-term financial growth algorithm with expected annualized cost synergies reaching approximately $50 million over the next two years, applying the learnings from the successful integrations of Snyder's-Lance and Pacific Foods. The transaction is expected to be accretive to adjusted diluted earnings per share by the second year, excluding one-time integration expenses and costs to achieve synergies.

Following the completion of the transaction, Sovos Brands' results will be managed within Campbell's Meals & Beverage division.

**Transaction Structure and Timing**

Campbell plans to finance the acquisition price through the issuance of new debt. Projected leverage is expected to be approximately 4x[7] at closing. Given Campbell's expectation of continued strong cash flow from operations, the company remains committed to maintaining its capital allocation priorities that include continued investment in key growth and productivity initiatives in the business, maintaining a competitive dividend, a focus on reaching our target leverage ratio of approximately 3x by the end of the third year, and continuing anti-dilutive share repurchases.

The closing of the transaction is subject to Sovos Brands stockholder approval and customary closing conditions, including regulatory approvals. Closing is expected by the end of December 2023. The transaction has been approved by both Boards of Directors. In addition, each member of the Board of Directors of Sovos Brands that is a stockholder of Sovos Brands and certain funds affiliated with Advent International that are stockholders of Sovos Brands have entered into voting agreements with Campbell, pursuant to which each has agreed, among other things, to support the transaction.

Evercore acted as Campbell's lead financial advisor in this transaction. Davis Polk & Wardwell LLP acted as Campbell's legal counsel. Goldman Sachs & Co. LLC and Centerview Partners LLC acted as financial advisors to Sovos Brands, and Hogan Lovells US LLP and Richards, Layton & Finger, P.A. acted as legal counsel. Weil, Gotshal & Manges LLP acted as Advent International's legal counsel.

**The Materially Incomplete and Misleading Proxy Statement**

22. On September 13, 2023, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Sovos stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinions provided by the Company's financial advisors, Goldman and Centerview; (iii) potential conflicts of interest faced by Goldman, Centerview and Company insiders; and (iv) the background of the Proposed Transaction.

*Material Misrepresentations and/or Omissions Concerning Financial Projections for Sovos*

23. The Proxy Statement fails to disclose material information concerning the financial projections for the Company.

24. For example, the Proxy Statement fails to disclose all line items underlying the Company's (i) Adjusted EBITDA; (ii) Adjusted Net Income; and (iii) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning Goldman's and Centerview's Financial Analyses*

25. The Proxy Statement fails to disclose material information concerning Goldman's and Centerview's financial analyses.

26. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the terminal year estimate of unlevered free cash flow; (ii) the Company's terminal values; (iii) the inputs and assumptions underlying the discount

8

rates ranging from 7.25% to 8.25%; (iv) the Company's net debt as of July 1, 2023; and (v) the Company's fully diluted outstanding shares.

27. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's net debt for each of the fiscal years 2023, 2024 and 2025; (ii) the projected year-end number of fully diluted outstanding shares of Company common stock for each of fiscal years 2023, 2024 and 2025; and (iii) the inputs and assumptions underlying the discount rate of 8.0%.

28. With respect to Goldman's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual financial metrics for each of the selected transactions analyzed by Goldman; (ii) the Company's net debt as of July 1, 2023; and (iii) the Company's fully diluted outstanding shares.

29. With respect to Goldman's *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions analyzed; and (ii) the individual premiums observed for each transaction.

30. With respect to Goldman's *Selected Public Company Comparables Analysis*, the Proxy Statement fails to disclose the individual financial metrics for each of the selected companies analyzed by Goldman.

31. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 9.00% to 9.75%; (iii) the Company's net debt as of July 1, 2023; (iv) the value of the Company's estimated net operating losses and R&D tax credits; and (v) the Company's fully diluted outstanding shares.

32. With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the individual financial metrics for each of the selected companies analyzed by Centerview; (ii) the Company's net debt as of July 1, 2023; and (iii) the Company's fully diluted outstanding shares.

33. With respect to Centerview's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the individual financial metrics for each of the selected transactions analyzed by Centerview; (ii) the Company's net debt as of July 1, 2023; and (iii) the Company's fully diluted outstanding shares.

34. With respect to Centerview's *Selected Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning Goldman's, Centerview's and Company Insiders' Potential Conflicts of Interest*

35. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Goldman and Centerview.

36. For example, the Proxy Statement sets forth:

> Goldman Sachs acted as financial advisor to the Company in connection with, and participated in certain of the negotiations leading to, the transaction contemplated by the merger agreement. Goldman Sachs has provided certain financial advisory and/or underwriting services to the Company and/or its affiliates from time to time for which Goldman Sachs Investment Banking has received, and may receive, compensation, including having acted as joint lead bookrunning manager with respect to its initial public offering of 23,334,000 shares of Company Stock in September 2021, as bookrunner with respect to a follow-on public offering of 8,500,000 shares of Company Stock in August 2022, and as lead bookrunning manager with respect to a follow-on public offering of 10,000,000 shares of Company Stock in May 2023.

Proxy Statement at 54. Yet, the Proxy Statement fails to disclose the compensation Goldman received from the Company for providing such services.

10

37. Similarly, in connection with Centerview's potential conflicts of interest, the Proxy Statement sets forth:

> In 2021, Centerview's French advisory affiliate, Centerview Partners France SCS ("Centerview France"), was engaged to provide financial advisory services to Nexi S.p.A. ("Nexi") in connection with its merger with Nets A/S, at which time affiliates of Advent (which holds an approximately 44% equity interest in the Company) and Bain Capital L.P. owned approximately 33% of Nexi, and Centerview France received compensation from Nexi for such services. . . . Centerview also noted that in the two years prior to the date of its written opinion, Centerview had been engaged to provide financial advisory services to an ad hoc group of priority lenders of Serta Simmons Bedding, LLC ("Serta Simmons"), a company in which affiliates of Advent previously held a majority equity interest, in connection with Serta Simmons' Chapter 11 filing and other restructuring-related matters, and Centerview received compensation for such services.

*Id.* at 61. The Proxy Statement fails, however, to disclose the compensation Centerview received in connection with the services provided to Nexi S.p.A. and priority lenders of Serta Simmons Bedding, LLC.

38. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders.

39. Specifically, the Proxy Statement fails to disclose whether any of Campbell's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation. The Proxy Statement further fails to disclose whether any members of executive management have secured positions with the post-close company or are anticipated to participate in the post-close company, as well as the details any employment and retention-related discussions and negotiations that occurred between Sovos directors and officers and Campbell.

*Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction*

11

40. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

41. According to the Proxy Statement, in early 2021 the Company contacted 17 potential buyers for the whole Company and 12 potential buyers for the Company's *noosa* brand. *See id.* at 32. The Proxy Statement fails, however, to disclose whether the Company entered into any non-disclosure or confidentiality agreements with potential buyers in connection with this outreach and the details thereof, including whether any of the non-disclosure or confidentiality agreements contain "don't ask, don't waive" standstill provisions currently precluding any party from submitting a topping bid for the Company.

42. In sum, the omission of the above-referenced information renders statements in the "Unaudited Prospective Financial Information," "Opinion of Goldman Sachs & Co. LLC," "Opinion of Centerview Partners, LLC," "Interests of Directors and Executive Officers in the Merger," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Sovos will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Sovos**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made,

omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Sovos is liable as the issuer of these statements.

45. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

48. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Sovos within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sovos and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Sovos, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  September 26, 2023					**ACOCELLI LAW, PLLC**


							By  */s/ Richard A. Acocelli*
							      Richard A. Acocelli
							      33 Flying Point Road, Suite 131
							      Southampton, NY 11968
							      Tel: (631) 204-6187
							      Email: racocelli@acocellilaw.com

							      *Attorneys for Plaintiff*

16